J-S24001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.T.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3388 EDA 2018 |

Appeal from the Decree Entered October 30, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001005-2017

*****

| | | |
|---|---|---|
| IN THE INTEREST OF: J.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.T.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3389 EDA 2018 |

Appeal from the Decree Entered October 30, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000687-2017

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.: **FILED MAY 21, 2019**

---

\* Former Justice specially assigned to the Superior Court.

J.T.R. (Father) appeals[1] from the trial court's decrees[2] involuntarily terminating his parental rights to his minor son, J.R., a/k/a J.C.R., (Child) (born 2/17) and changing the goal from reunification to adoption. After careful review, we affirm.

Child was born prematurely in February 2017; at the time of Child's birth, Mother identified a different male as Child's biological father. When Child was born, Mother's three other children were already in foster care[3] due to abuse allegations related to Mother. On March 8, 2017, Child was adjudicated dependent and placed into the care and custody of the Philadelphia Department of Human Services (DHS). Child entered kinship care with Maternal Great-Grandmother, a pre-adoptive resource.

Father first identified himself to Community Umbrella Agency (CUA) case manager Rayonna Hall as Child's biological father on February 10, 2018, having previously denied paternity to the same case manager in April 2017.[4] N.T. Termination/Goal Change Hearing, 10/30/18, at 100, 105. When Father

---

[1] Our court consolidated these separate appeals *sua sponte*. **See** Pa.R.A.P. 513.

[2] Technically, Father's appeal of the dependency docket is from a permanency review order changing the goal from reunification to adoption.

[3] Mother's three other children had come into DHS' care and custody in May 2016; an abuse report was determined to be "founded" regarding Mother's actions toward one of the three children.

[4] Allegedly, Father admitted to another CUA agency worker that he was Child's father, but later denied it to Hall. N.T. Termination/Goal Change Hearing, 10/30/18, at 138.

admitted his paternity, the case manager told Father that he would have to provide the agency with his contact information, would need to attend the next permanency hearing, that she would try to get Father visitation with Child, and that she would also provide Father with single case plan objectives. *Id.* at 108-109. At that time the case manager also gave Father her contact information. *Id.* at 109. The court ordered the following plan objectives for Father: referral to the Clinical Evaluation Unit (CEU) for a urine drug screen assessment; three random drug screens; compliance with programs and services through the Achieving Reunification Center (ARC); and employment verification to CUA.

Beginning in May 2018, Father was permitted to have weekly, supervised visitation with Child. At the time of the termination/goal change hearing in October 2018, Father had only visited with Child twice within the past year. *Id.* at 131. At the time of the hearing, Father was living with his aunt; CUA had deemed the aunt's residence in violation of a safety plan and, thus, not appropriate for Child. *Id.* 160. Father received treatment which was part of his service plan objective, however he had not signed releases so CUA was unable to verify his compliance.

On May 7, 2018, DHS filed a motion for aggravated circumstances against Father based on his failure to maintain substantial and continuing contact with Child. In the motion, DHS alleged that Father had known of Child and visited with Child on April 15, 2017, but had not visited with Child again until January 2018. On May 8, 2018, DHS filed petitions to involuntarily

- 3 -

terminate Father's parental rights to Child and to change the goal from reunification to adoption. The termination petition sought termination under sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[5] On September 20, 2018, the court entered an aggravated circumstances order with regard to Father, finding "clear and convincing evidence [was] presented to establish that the alleged aggravated circumstances exist[.]" Order, 9/20/18, at 1.

On October 30, 2018, the trial court held a joint termination of parental rights and goal change hearing.[6] CUA case manager Rayonna Hall and Father testified at the proceeding. After the hearing, the court entered a decree involuntarily terminating Father's parental rights under sections 2511(a)(1), (2) and (b) of the Adoption Act[7] and a permanency review order changing the

_____

[5] **See** 23 Pa.C.S. §§ 2101-2910. At the conclusion of the termination/goal change hearing, DHS' counsel indicated that the agency was proceeding to terminate Father's parent rights under sections 2511(a)(1), (2), and (b). N.T. Termination/Goal Change Hearing, 10/30/18, at 216.

[6] Child was represented by guardian *ad litem*, Christina Magnus, Esquire, and attorney, Mario D'Adamo, Esquire, at the termination/goal change hearing. **See** 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and **In re K.R.**, 200 A.3d 969 (Pa. Super. 2018) (en banc), **but see In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests."). Guardian *ad litem* for Child has joined in the brief filed by DHS on appeal.

[7] Mother voluntarily relinquished her parental rights to Child. She is not a party to this appeal.

goal from reunification to adoption. Father filed timely notices of appeal[8] and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[9] Father presents the following issues for our consideration:[10]

> (1)  The trial court abused its discretion by terminating parental rights under § 2511(a)(1) of the Pennsylvania Adoption Act.
>
> (2)  The trial court abused its discretion by terminating parental rights under § 2511(a)(2) of the Pennsylvania Adoption Act.

---

[8] Father filed two separate notices of appeal for each lower court docket (dependency and adoption) in compliance with *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018), which held that "[I]n future cases [Pa.R.A.P.] 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." *See also In re M.P.*, 2019 PA Super 55 (Pa. Super. filed February 22, 2019) (applying *Walker* holding in termination of parental rights/goal change appeal).

[9] On January 25, 2019, our Court remanded this case to the trial court for a determination as to whether counsel, who was still of record but failed to file a docketing statement in the appeal, had abandoned Father. On January 31, 2019, counsel sent this Court a letter noting that she had not abandoned Father, but that "[her]appeal was separated into two case numbers 3388 EDA 2018 and 3389 EDA 2018. [She] filed [her] docketing statement successfully in December for 3389 [sic] 2018 . . . [and] did not realize there were no cases until [she] received the notice to file the docketing statement under 3388." Letter from Julie Hillman Rose, Esquire, 1/31/19. On February 4, 2019, the trial court entered an order stating that after conducting an abandonment determination hearing, the court found Attorney Rose indicated she complied with all outstanding requests from the Superior Court and that she had not abandoned her client. Trial Court Order, 2/4/19.

[10] We note that Father's brief does not comply in many respects with our briefing rules found in the Rules of Appellate Procedure. *See* Pa.R.A.P. 2101, *et seq.* Counsel is cautioned that in the future this lack of compliance could result in waiver or dismissal of an appeal.

> (3)    The trial court abused its discretion in [c]hanging the [g]oal to [a]doption.

Appellant's Brief, at 7-9.[11]

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. ***Id.***

Father first claims that the trial court abused its discretion by terminating his parental rights to Child under section 2511(a)(1) where DHS did not prove that Father knew he was Child's father before February 2018, Father attempted to schedule visits with Child, Father has stable housing, and DHS did not demonstrate Father's desire to relinquish his parental rights.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

***In re adoption of S.M.***, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). ***See also In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006) (party

---

[11] We have discerned the issues Father wishes to raise on appeal from the "Arguement" [sic] section of his brief since he left the page titled "Statement of the Questions Involved" blank. Appellant's Brief, at 4.

seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).[12]

At the termination/goal change hearing, case manager Hall testified that Child does not look to Father to provide for his day-to-day needs. N.T. Termination/Goal Change Hearing, 10/30/18, at 131. Hall also testified that Father has never sent Child letters, gifts or financial support his entire life. *Id.* However, Hall did testify that Father asks her about Child's general well-being. *Id.* Hall testified that because Father has not adequately participated in his single case plan objectives, she would not recommend he be granted unsupervised visitation. *Id.* at 132. Child has bonded with his biological sibling in his kinship home, is well-bonded with the entire kinship family, and looks to Great-Grandmother to provide for his physical and emotional needs. *Id.* at 132-33. Finally, Hall testified that it would be in Child's best interests to be adopted, that terminating Father's parental rights would not irreparably harm Child, and that there is no parent-child bond between Father and Child. *Id.* at 140.

Father testified that he first suspected he could be Child's biological father after he slept with Mother. *Id.* at 166. Father also testified that he never gave DHS any employment information or verification, but that he

---

[12] Father does not argue in his appellate brief that the trial court abused its discretion by terminating his rights under section 2511(b).

"work[s] under the table packing food in New Jersey." *Id.* at 176. Father acknowledged that he has never provided financial support for Child and has never given Child any presents or sent Child any cards or letters. *Id.* at 176-77. At the time of the hearing, Father was on probation for a 2010 robbery. *Id.* at 184-85. Father testified that he contacted case manager Hall, via text message and voicemail, to set up visitation with Child, but that he never heard back from her. *Id.* at 194-95. However, Father also acknowledged that he was "holding off" on seeing Child until Child attended Family School. *Id.* at 209. At the hearing, Father produced a certificate indicating that he had graduated from anger management classes in August 2018. *Id.* at 200. Although Father had started mental health counseling in 2017, he was incarcerated soon thereafter and never completed the program. *Id.* at 203-204. Finally, Father testified that he would like to have a relationship with Child, wants to take care of Child, and would be willing to obtain verified employment. *Id.* at 206-207.

Based upon competent evidence of record, we conclude that DHS proved, by clear and convincing evidence, termination was proper under section 2511(a)(1) where Father, for "a period of at least six months immediately preceding the filing of the [termination] petition[,] . . . refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). Father believed he could be Child's biological father child for more than one year

before the termination hearing.[13] During that time Father never provided emotional, financial, or physical support for Child. Father visited with Child only two times during Child's lifetime. Father did not comply and complete his service plan objectives. Finally, CUA case manager Hall testified that Father and Child are not bonded, termination would not irreparably harm Child and, that adoption would be in Child's best interests where his foster family is a pre-adoptive resource and is meeting all of his needs.[14]

In his final issue, Father contends that CYS did not prove, by clear and convincing evidence, that Child's best interests could not be served by reunification. Rather, he alleges that CYS only proved that "[Child] was happy and settled with his Maternal Great-Grandmother." Appellant's Brief, at 8.

With regard to goal change, our standard of review is well settled:

In cases involving a court's order changing the placement goal . . . to adoption, our standard of review is [an] abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of

---

[13] Verification of paternity is not a prerequisite to the duty of performing parental duties for purposes of terminating parental rights. *See In re Z.S.W.*, 946 A.3d 726 (Pa. Super. 2008) (Court refused to adopt rationale that "until . . . parentage was confirmed by a paternity test" all fathers would be relieved of their parenting duties).

[14] Having found that termination was proper under section, 2511(a)(1), we need not consider Father's second issue – whether the trial court abused its discretion by terminating Father's parental rights under section 2511(a)(2). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (Court may affirm trial court's decision regarding termination of parental rights with regard to any singular subsection of section 2511(a)).

partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record.

*In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008) (citations and internal quotation marks omitted). The trial court must focus on the child and determine the goal in accordance with the child's best interests, not those of the parents. *Id.* at 978. Moreover, "[s]afety, permanency, and well-being of the child must take precedence over all other considerations." *Id.* (citation omitted).

At each permanency hearing, the court shall determine, among other things, "the continuing necessity for and appropriateness of the placement" of a child, as well as whether efforts to reunify the family need to be made or should continue being made where aggravated circumstances exist. *See* 42 Pa.C.S. §§ 6351(f)(1), (9). When parents have cooperated with the agency, achieved the goals of their permanency plans, and alleviated the circumstances that necessitated the child's original placement, the agency should continue to put forth efforts to reunite the child with his parents. *In re A.K.*, 906 A.2d 596 (Pa. Super. 2006). However, "when the child welfare agency has made reasonable efforts to return a foster child to . . . [his or] her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006).

- 10 -

Again, after a comprehensive review of the record in this case, we discern no abuse of discretion in the trial court's decision to change Child's permanency goal from reunification to adoption. The decision is well-supported by the evidence where: the court found aggravated circumstances existed with regard to Father; Father did not comply with his permanency plan; Father has not made any progress toward alleviating the circumstances which necessitated Child's original placement; Father has not contributed in any way to Child's physical or emotional well-being; and there is no demonstrated bond between Father and Child. Moreover, Child has bonded with her foster family, a pre-adoptive resource. Great-Grandmother provides for Child's physical and emotional needs and thrives in her care. The trial court's determination to change the goal to adoption is best-suited to meet Child's needs and welfare. *In re S.B.*, *supra*.

Decrees affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/19

- 11 -